UNITED STATES DISTRICT COURT

EASTERN DISTRICT OF CALIFORNIA

UNITED STATES,

Plaintiff,

v.

APPROXIMATELY $188,570.45 SEIZED FROM EDUCATIONAL EMPLOYEES CREDIT UNION, *et al.*,

Defendants.

Case No. 1:25-cv-00039-EPG

ORDER GRANTING PLAINTIFF'S MOTION FOR DEFAULT JUDGMENT AND APPROVING THE STIPULATION BETWEEN PLAINTIFF AND CLAIMANT REGINA HALDERMAN

(ECF Nos. 24, 30)

## I. INTRODUCTION

On January 8, 2025, Plaintiff United States of America filed this civil *in rem* forfeiture action, citing two provisions of 18 U.S.C. § 981. (ECF No. 1, pp. 6-7). The complaint sought the forfeiture of funds to Plaintiff, specifically, $188,570.45 from a credit union account and $11,700 in U.S. currency, both of which are alleged to be the proceeds of Douglas Halderman's illegal firearm sales. Mr. Halderman is now deceased, and his widow, Regina Halderman (Claimant), is the only person who has filed a claim to the funds. (ECF No. 10).

On July 1, 2025, Plaintiff and Claimant filed a stipulation for a final judgment of forfeiture, agreeing that the $188,570.45 will be forfeited to Plaintiff and the $11,700 will be returned to Claimant. (ECF No. 24, p. 2). Further, the parties ask that the Court enter a default judgment against the Estate of Douglas Halderman (the Estate). (*Id.*).

After instructing Plaintiff to file a motion for default judgment as to the Estate, Plaintiff did so on August 15, 2025. (ECF No. 30). No response to the motion has been timely filed, as

required under Local Rule 230(c), by the Estate, Claimant, or anyone else.

As explained below, the Court will grant the motion for default judgment and enter a final judgment of forfeiture consistent with the parties' stipulation.[1]

## I. BACKGROUND

### A. Complaint

Summarized, Plaintiff's in rem civil forfeiture complaint alleges as follows.

From 2016 to 2021, Mr. Halderman "bought and sold machineguns, submachine guns, silencers, and other illegal firearms and firearm-related parts in violation of the National Firearms Act (NFA)." (ECF No. 1, p. 2). He did not have "the required tax stamp to possess NFA weapons" and "also did not possess the necessary importer's license to import firearms." (*Id.* at 5).

The Bureau of Alcohol, Tobacco, Firearms and Explosives began investigating him, and used a confidential information to purchase several firearms from him in 2020 and 2021. (*Id.* at 2). Ultimately, law enforcement executed a Federal search warrant at Mr. Halderman's residence, seizing firearms and other evidence. (*Id.* at 4).

Mr. Halderman admitted to purchasing "firearms without barrels from an individual in Germany who shipped them from Germany to [his] residence." (*Id.* at 5). Upon receiving the firearms, he would buy "matching barrels for the firearms, completing the firearm's functionality, and then [sell] them online on via www.gunbroker.com or www.gunsamerica.com." (*Id.*). Further, he "explained that his German seller typically emailed a list of available machineguns, which [he] then purchased for $500 to $1,000." (*Id.*). And after assembling the firearms, he "sold each machinegun for between $1,000 and $4,500 each, earning a handsome profit." (*Id.*). And he admitted that he transferred his proceeds into his Educational Employees Credit Union account (EECU account), which is the account from which the $188,570.45 was seized. (*Id.* at 1, 5).

In October 2021, Mr. Halderman "was charged in the Eastern District of California with various federal firearm violations, including dealing firearms without a license, unlawful transfer of machinegun, transfer of unregistered firearm, and illegal importation of firearms." (*Id.* at 6,

[1] The parties have consented to proceed before the undersigned, and the previously assigned District Judge reassigned the case to the undersigned for all further proceedings on July 14, 2025. (ECF No. 28).

citing *United States v. Douglas Gene Halderman*, Case 1:21-cr-00242-TLN-BAM).

The Court notes that, in January 2025, following Mr. Halderman's death, the indictment in his criminal case was dismissed upon the motion of the United States. (ECF No. 50 of the criminal case).

**B. Procedural History**

On January 15, 2025, the Court issued an order for publication on the official internet government forfeiture site www.forfeiture.gov and directed the Clerk of Court to issue an arrest warrant for the funds. (ECF Nos. 3, 4). The Clerk of Court issued the warrant the next day. (ECF No. 5).

On February 19, 2025, Plaintiff filed a declaration that notice of the civil forfeiture was posted on the government's website for at least 30 consecutive days beginning on January 17, 2025. (ECF No. 6). And on March 6, 2025, Plaintiff filed a notice showing the arrest of the funds at issue. (ECF No. 7). On this same date, Plaintiff filed proof of service as to certain case documents (*e.g.*, the complaint) being served on Claimant and the Estate. (ECF Nos. 8, 9).

On April 2, 2025, Claimant through her attorney filed a claim to the funds. (ECF No. 10).

Thereafter, Plaintiff requested a clerk's entry of default as to the Estate, which the Court directed the Clerk of Court to enter. Notably, Claimant did not file any opposition to the request despite being given the chance to do so. (ECF Nos. 15, 16, 18, 19, 21, 22).

Plaintiff and Claimant filed their stipulation for final judgment of forfeiture on July 1, 2025. (ECF No. 24). As noted above, the $188,570.45 will be forfeited to Plaintiff and the $11,700 will be returned to Claimant. Additionally, the parties agreed to other terms, including Claimant waiving certain rights, the parties bearing their own costs and fees, and the Court retaining jurisdiction to enforce the terms of the final judgment.

No other claimant has filed a claim as to the funds.

**C. Motion for Default Judgment**

Plaintiff timely filed its motion for default judgment on August 15, 2025. (ECF No. 30).

The motion attaches a declaration by Elisa Rodriguez, a contract paralegal, who provides information regarding the steps taken to achieve forfeiture in compliance with the law, *e.g.*, service, the arrest of the funds, and publication. (ECF No. 30-1). The motion also attaches copies

of the notice of forfeiture action that was mailed to Claimant and the Estate, as well as corresponding documents regarding service of process. (*Id.* at 5-19).

In its motion for default judgment, Plaintiff argues that (1) it has complied with Local Rule 540 regarding *in rem* default judgments, (2) it has properly provided notice of this action; (3) no claim has been filed by the Estate; and (4) forfeiture is warranted by the so-called *Eitel* factors. (ECF No. 30). Lastly, Plaintiff states that, "in addition to seeking a default judgment against the interest of the Estate of Douglas Halderman, the government seeks a binding judgment against the interests of the entire world, *i.e.*, a Final Judgment of Forfeiture that vests in the United States all right, title, and interest in the defendant funds." (*Id.* at 16-17).

## II. LEGAL STANDARDS

### A. Civil Forfeiture

Plaintiff relies on two provisions of 18 U.S.C. § 981 in support of forfeiture. (ECF No. 1, pp. 6-7). The first, § 981(a)(1)(C), provides for forfeiture of

> [a]ny property, real or personal, which constitutes or is derived from proceeds traceable to a violation of section 215, 471, 472, 473, 474, 476, 477, 478, 479, 480, 481, 485, 486, 487, 488, 501, 502, 510, 542, 545, 656, 657, 670, 842, 844, 1005, 1006, 1007, 1014, 1028, 1029, 1030, 1032, or 1344 of this title or any offense constituting "specified unlawful activity" (as defined in section 1956(c)(7) of this title), or a conspiracy to commit such offense.

18 U.S.C. § 981(a)(1)(C).

The second, § 981(a)(1)(A), provides for forfeiture of "[a]ny property, real or personal, involved in a transaction or attempted transaction in violation of section 1956, 1957 or 1960 of this title, or any property traceable to such property." 18 U.S.C. § 981(a)(1)(A).

"[F]orfeitures should be enforced only when within both letter and spirit of the law," *United States v. Marolf*, 173 F.3d 1213, 1217 (9th Cir. 1999) (citation omitted), and "forfeiture statutes are strictly construed against the government." *$191,910.00 in U.S. Currency*, 16 F.3d at 1068 (citation omitted). Procedurally, an *in rem* civil forfeiture must comply with the Federal Rules of Civil Procedure's Supplemental Rules for Admiralty and Maritime Claims and Asset Forfeiture Actions (Supplemental Rules). Specifically, Supplemental Rule G governs civil forfeiture actions *in rem*.

Pursuant to the Supplemental Rules, the United States initiates forfeiture proceedings by

filing a complaint. Fed. R. Civ. P. Supp. G(2). Among other things, the complaint must be verified, describe the property at issue with reasonable particularity, and include sufficiently detailed factual allegations to support a "reasonable belief" the United States will be able to meet its burden at trial. Fed. R. Civ. P. Supp. G(2)(a),(c), and(f).

Relevant here, the United States may provide notice by publication by "posting a notice on an official internet government forfeiture site for at least 30 consecutive days." Fed. R. Civ. P. Supp. G(4)(a)(iv)(C). Further, "[t]he notice must be sent by means reasonably calculated to reach the potential claimant." Fed. R. Civ. P. Supp. G(4)(b)(iii)(A)).

The notice must state the following:

> (A) the date when the notice is sent; (B) a deadline for filing a claim, at least 35 days after the notice is sent; (C) that an answer or motion under Rule 12 must be filed no later than 21 days after filing the claim; and (D) the name of the government attorney to be served with the claim and the answer.

Fed. R. Civ. P. Supp. G(4)(b)(ii)(A)-(D).

However, although the notice must be sent by a means that is reasonably calculated to reach the claimant, there is no requirement that a potential claimant *actually* receive notice of the forfeiture action. *See United States v. 5145 N. Golden State Blvd.*, 135 F.3d 1312, 1316 (9th Cir. 1998) (concluding that due process does not require that a potential claimant in a civil forfeiture proceeding receive actual notice of the proceedings).

Finally, in addition to satisfying the above requirements, a plaintiff must comply with Local Rule 540, which provides as follows:

> (a) Notice Required. A party seeking a default judgment in an action in rem shall show to the satisfaction of the Court that due notice of the action and arrest of the property has been given:
>
> (1) By publication, see L.R. 530;
>
> (2) By personal service on the person having custody of the property;
>
> (3) If the property is in the hands of a law enforcement officer, by personal service on the person having custody prior to its possession by law enforcement agency or officer; and
>
> (4) By personal service or by certified mail, return receipt requested, to every other person who has not appeared in the action and is known to have an interest in the property; provided however, that failure to give actual notice to such other person may be excused upon a satisfactory showing of diligent efforts to give such notice without success.

Local Rule 540(a)(1)-(4).

**B. Default Judgment**

Federal Rule of Civil Procedure 55(b)(2) permits a court to enter a default judgment against a defendant who has failed to defend a case. Fed. R. Civ. P. 55(b)(2). Whether to enter a default judgment lies within the Court's discretion. *Draper v. Coombs*, 792 F.2d 915, 925 (9th Cir. 1986). Factors (*i.e.*, the *Eitel* factors) that may be considered in determining whether to enter default judgment include the following:

> (1) the possibility of prejudice to the plaintiff; (2) the merits of the plaintiff's substantive claim; (3) the sufficiency of the complaint; (4) the sum of money at stake in the action; (5) the possibility of a dispute concerning material facts; (6) whether the default was due to excusable neglect; and (7) the strong policy underlying the Federal Rules of Civil Procedure favoring decision on the merits.

*Eitel v. McCool*, 782 F.2d 1470, 1471-72 (9th Cir. 1986).

"The general rule of law is that upon default the factual allegations of the complaint, except those relating to the amount of damages, will be taken as true." *TeleVideo Sys., Inc. v. Heidenthal*, 826 F.2d 915, 917-18 (9th Cir. 1987) (citation omitted). Before awarding a default judgment, the Court must determine the Court's jurisdiction. *See In re Tuli*, 172 F.3d 707, 712 (9th Cir. 1999) ("When entry of judgment is sought against a party who has failed to plead or otherwise defend, a district court has an affirmative duty to look into its jurisdiction over both the subject matter and the parties.").

**III. DISCUSSION**

**A. Procedural Requirements**

**1. Sufficiency of the complaint**

Pursuant to the Supplemental Rules, a plaintiff must file a verified complaint that states the grounds for jurisdiction and venue; describes the property at issue with reasonable particularity; if the property is tangible, states its location when any seizure occurred and, if different, its location when the action is filed; identifies the relevant forfeiture statutes, and includes sufficiently detailed facts to support a reasonable belief that Plaintiff will be able to meet its burden at trial. Fed. R. Civ. P. Supp. G(2)(a)-(f).

Here, the complaint is verified; states the grounds for jurisdiction (28 U.S.C. § 1355(a))[2]

---

[2] 28 U.S.C. § 1355(a) provides as follows: "The district courts shall have original jurisdiction, exclusive of

and venue (the acts alleged occurred in this District); describes the funds with reasonable particularity ($188,579.45 seized from EECU Account Number 11062916 and $11,700 in currency); states the location where the seizure of the currency[3] occurred and its location when the case was filed (seized from Mr. Halderman's safe at his residence and located in the custody of the U.S. Marshals Service when the case was filed); identifies the forfeiture statutes (18 U.S.C. § 981(a)(1)(C) and 18 U.S.C. § 981(a)(1)(A)); and includes sufficient detailed facts to support a reasonable belief that Plaintiff would be able to prevail at trial (*e.g.*, facts regarding Mr. Halderman's alleged illegal firearms sales).

**2. Notice by publication**

Supplemental Rule G(4)(a)(iv)(C) provides, among other means of publication, that the United States may post "a notice on an official internet government forfeiture site for at least 30 consecutive days."

Here, publication occurred on the official internet government forfeiture site (www.forfeiture.gov) for 30 consecutive days beginning on January 17, 2025. (ECF No. 30, p. 9; ECF No. 6). A copy of the notice was attached to the declaration of publication, and it describes the property with reasonable particularity. (ECF No. 6, p. 3). The notice clearly sets forth the time limits for filing a claim and an answer or motion. (*Id.*). The notice also provides the name and contact information for an attorney to be served with any claim. (*Id.*).

Thus, the Supplemental Rule's notice by publication requirements have been satisfied.

**3. Personal notice**

When the Government knows the identity of the property owner, the "constitutional right to due process requires the Government to make a greater effort to give him notice than otherwise would be mandated." *United States v. Real Prop.*, 135 F.3d 1312, 1315 (9th Cir. 1998). In such cases, the Government must attempt to provide actual notice by means reasonably calculated under all circumstances to apprise the owner of the pendency of the forfeiture action. *Dusenbery v. United States*, 534 U.S. 161, 168 (2002). Supplemental Rule G(4)(b)(iii)(A) mirrors this

---

the courts of the States, of any action or proceeding for the recovery or enforcement of any fine, penalty, or forfeiture, pecuniary or otherwise, incurred under any Act of Congress, except matters within the jurisdiction of the Court of International Trade under section 1582 of this title."

[3] *See United States v. $22,361.83 U.S. Funds seized from various accounts*, No. CV-11-0317-EFS, 2012 WL 1884386, at *1 (E.D. Wash. May 23, 2012) (characterizing currency as tangible property).

requirement, providing for notice to be "sent by means reasonably calculated to reach the potential claimant." However, reasonable notice does not require actual notice. See *Real Prop.*, 135 F.3d at 1315 ("In view of the Government's efforts to notify [claimant], we reject [claimant's] claim that due process requires that he received actual notice of the forfeiture proceedings.").

Additionally, Local Rule 540(a) addresses notice to persons known to have an interest in property subject to forfeiture, requiring personal service or certified mail, return receipt requested, to persons who have not appeared that are known to have an interest in the property, but providing "that failure to give actual notice to such other person may be excused upon a satisfactory showing of diligent efforts to give such notice without success."

Here, Plaintiff submits the declaration of Elisa Rodriguez regarding personal notice:

> On February 5, 2025, the United States mailed copies of the complaint, application for publication, proposed order for publication, order for publication, order regarding clerk's issuance of warrant to arrest, warrant for arrest, order setting mandatory scheduling conference, initial order re cases, and court notices to The Estate of Douglas Halderman at 2890 Loyola Ave, Clovis, CA, by first class mail and certified mail number 9589 0710 5270 2345 5606 97. The PS Form 3811 (certified mail "green card" showing delivery of mail) was signed on February 7, 2025. A true and correct copy of the letter mailed to The Estate of Douglas Halderman and certified mail receipts is attached as Exhibit A.
>
> On February 10, 2025, the U.S. Marshals Service attempted to personally serve the above listed documents on The Estate of Douglas Halderman at 2890 Loyola Ave, Clovis, CA 93619. On February 11, 2025, after three attempts, the Deputy U.S. Marshal left the above-listed documents at the residence.

(ECF No. 30-1, p. 2).[4]

Additionally, the Court notes that Claimant, the widow of the decedent, has received notice of this forfeiture action, as evidenced by her filing a claim for the funds and thereafter entering into a stipulation for final judgment of forfeiture with Plaintiff. (ECF Nos. 10, 24). Thus, although Claimant is not directly at issue in the motion for default judgment, she has been notified of the action, participated in it, and agrees with the Plaintiff's requested disposition of the

---

[4] The Court notes that Rodriguez's declaration indicates that the Estate may not exist: "In or around June 2025, I was informed by Claimant's counsel that there is no Estate of Douglas Halderman, and that no probate case had been commenced or will be commenced to create such an estate. My office has conducted its own online searches and investigation and has not located any probate case creating an Estate of Douglas Halderman." (ECF No. 30-1, p. 2).

funds.

Lastly, the Court notes that the person mostly likely to have a claim for an ownership interest in the funds was Mr. Halderman. However, as discussed above, he is now deceased.

The Court concludes that Plaintiff has satisfied the personal notice requirements for this civil forfeiture action.

**4. The time to file a claim or answer**

Any person who asserts an interest in or a right in a forfeiture action must file a claim with the Court within 35 days (or later period specified in the notice) after service of the Government's notice or, "if notice was published but direct notice was not sent to the claimant or the claimant's attorney," 60 days after the first day of publication on the government's forfeiture site. See Supp. R. G(4)(b)(ii)(B) & G(5)(a)(ii)(B). Failure to comply with the procedural requirements for opposing the forfeiture precludes a person from establishing standing as a party to the forfeiture action. *Real Property*, 135 F.3d at 1317.

Here, the time for filing a claim following the notice provided has expired without the Estate filing anything. Thus, the Court concludes that the Estate has failed to timely file any claim.

**5. Conclusion**

In conclusion, Plaintiff has met the procedural requirements applicable to civil forfeiture *in rem* actions.

**B. *Eitel* Factors**

Plaintiff seeks judgment against the interests of the Estate and requests that the Court enter a final judgment of forfeiture vesting it with all right, title, and interest in the funds. (ECF No. 30, pp. 16-17). Accordingly, the Court will examine the *Eitel* factors.

**1. Prejudice to Plaintiff**

Turning to the first *Eitel* factor, Plaintiff argues that "the first factor is met as the government has no other opportunity to establish its right to the defendant funds against any Estate of Douglas Halderman except through default judgment." (*Id.* at 12).

The Court agrees. If default judgment is not entered, Plaintiff will effectively be denied relief, as it is apparent that the Estate will not defend this action. Accordingly, this *Eitel* factor

weighs in favor of granting default judgment.

**2. Substantive merits and sufficiency of complaint**

As to the second and third *Eitel* factors, Plaintiff argues that it has sufficiently alleged forfeiture under the two statutes at issue. (*Id.* at 13).

For the second and third *Eitel* factors, the Court weighs the merits of the substantive claims and the sufficiency of the operative complaint. *Eitel*, 782 F.2d at 1471-72. Essentially, these "factors require [a] plaintiff to state a claim on which plaintiff can recover." *OL USA LLC v. TTS Int'l LLC*, No. 2:21-CV-1541 WBS DB, 2022 WL 2208527, at *2 (E.D. Cal. June 21, 2022), *report and recommendation adopted*, 2022 WL 4450658 (E.D. Cal. Sept. 23, 2022).

Here, Plaintiff argues as follows:

> The first statute, 18 U.S.C. § 981(a)(1)(C), permits forfeiture of property constituting or derived from proceeds traceable to a violation of an offense constituting "specified unlawful activity" as defined by 18 U.S.C. § 1956(c)(7). The unlawful importation of firearms (18 U.S.C. § 922(l)) is codified as "specified unlawful activity" under 18 U.S.C. § 1956(c)(7)(D). The complaint alleges that Halderman imported weaponry from Germany and sold that weaponry in exchange for money from customers located throughout the United States. ECF No. 1. The facts that Halderman imported this weaponry and sold them without a license support the conclusion that he was engaged in the unlawful importation of firearms and that he profited from their sale. *Id.* Furthermore, during Halderman's interview with law enforcement, he admitted to conducting his sales through www.gunbroker.com and www.gunsamerica.com without a proper importer's license and without the necessary tax stamp to sell weapons under the National Firearms Act. *Id.* Moreover, Halderman admitted his sales date back to 2007. *Id.* These uncontroverted facts indicate that the sales produced a profit for Halderman and establish the PayPal transfers and money order or check deposits represent proceeds from these gun sales, rendering the defendant funds forfeitable to the United States under 18 U.S.C. § 981(a)(1)(C).
>
> The defendant funds are also independently forfeitable under the money laundering statute as the funds were "involved in" a transaction that violated 18 U.S.C. § 1957. *See* 18 U.S.C. § 981(a)(1)(A). Section 1957 prohibits a monetary transaction in criminally derived property of a value greater than $10,000 derived from specified unlawful activity. 18 U.S.C. §§ 1957(a), 1961(1). Here, the uncontroverted facts of the complaint allege that Halderman sold firearms that originated from unlawfully imported weapons from a German vendor. ECF. No. 1, ¶ 17, 21, 22. Halderman opened a PayPal account which he connected to his EECU Account for the purpose of buying illegal German inventory and receiving the sale proceeds from his unlawful gun sales. *Id.* at ¶ 23 – 25. Between January 1, 2020 and August 31, 2021, Halderman's PayPal account paid $50,934.47 to his German seller for weapons. *Id.* at ¶ 24. The PayPal account was funded by the EECU Account which received $183,137.30 from weapons-buying customers, of

> which $86,018.95 derived from PayPal transfers. *Id*. at ¶ 25. The purchase of weapons was necessarily in furtherance of Halderman's desire to continue profiting for his illegal gun sales. The $50,934.47 PayPal transfer was sourced from criminally derived property, as were the $86,018.95 in PayPal transfers to the EECU Account. *Id*. at ¶ 25. The deposits into the EECU Account in addition to the PayPal transfers were sourced from money orders and other negotiable instruments received from clients for the purchase of illegal firearms that Halderman had no license to sell. *Id*. Since the bank records show minimal unrelated activity, it is inferred from the consistent and voluminous sales of illegal weapons that the cash derived from gun sale proceeds. *Id.* In conclusion, the second and third *Eitel* factors weigh in favor of granting default judgment.

(*Id.* at 29-30).

The Court finds that Plaintiff has sufficiently alleged forfeiture. Pertinent here, the first statute, 18 U.S.C. § 981(a)(1)(C) permits forfeiture of any property that is traceable to "any offense constituting 'specified unlawful activity' (as defined in section 1956(c)(7) of this title)." In turn, § 1956(c)(7)(D), defines "specified unlawful activity" to include a violation of § 922(l), which makes it "unlawful for any person knowingly to import or bring into the United States or any possession thereof any firearm or ammunition; and it shall be unlawful for any person knowingly to receive any firearm or ammunition which has been imported or brought into the United States or any possession thereof in violation of the provisions of this chapter." As Plaintiff describes above, the complaint's allegations about Mr. Halderman's importation and sale of firearms into the United States satisfies § 922(l) and thus the resulting forfeiture of the funds relating to his illegal activity under § 981(a)(1)(C).

Additionally, the second statute, 18 U.S.C. § 981(a)(1)(A) permits forfeiture of any property "involved in a transaction or attempted transaction in violation of section 1956, 1957 or 1960 of this title, or any property traceable to such property." In turn, § 1957(a) prohibits "knowingly engage[ing] or attempt[ing] to engage in a monetary transaction in criminally derived property of a value greater than $10,000 and is derived from specified unlawful activity." Under § 1957(f), "specified unlawful activity" has the same "meaning given [this term] in section 1956 of this title." As discussed above, § 1956(c)(7)(D), defines "specified unlawful activity" to include a violation of § 922(l), *i.e.*, the illegal importation of firearms. As Plaintiff contends, the complaint's allegations about Mr. Halderman's importation and sale of firearms, leading him to obtain criminally derived funds greater than $10,000, satisfies § 981(a)(1)(A).

Accordingly, the Court finds that the second and third *Eitel* factors weigh in favor of granting default judgment.

**3. Sum of money in relation to seriousness of conduct**

Next, the Court considers the sum of money at stake in the action, with a lower sum weighing in favor of default judgment.

Plaintiff argues that, "[w]hile the amount of the defendant funds is substantial, that amount is not unreasonable and does not overcome the undisputed evidence that the defendant funds were seized as the result of a five-year long investigation into Halderman's firearms trafficking resulting in the seizure of about 130 machineguns and silencers." (*Id.* at 14).

The Court agrees, the Court finds that the fourth *Eitel* factor weighs in favor of granting default judgment.

**4. Possibility of dispute**

No genuine issue of material fact is likely to exist. The Estate has not responded to the complaint, and Plaintiff has adequately alleged forfeiture under the statutes discussed above. Accordingly, the Court finds that the fifth *Eitel* factor weighs in favor of granting default judgment.

**5. Whether the default was due to excusable neglect**

The Court finds that the default in this matter was not due to excusable neglect. As discussed above, Plaintiff provided reasonable notice to the Estate, which has failed to respond. Accordingly, the Court finds that the sixth *Eitel* factor weighs in favor of granting default judgment.

**6. Policy favoring decision on the merits**

Default judgments are disfavored because "[c]ases should be decided on their merits whenever reasonably possible." *Eitel*, 782 F.2d at 1472. However, "the policy favoring decisions on the merits does not weigh against entering default judgment where . . . the Defendants' failure to appear has made a decision on the merits impossible." *Arroyo v. J.S.T. LLC*, No. 1:18-CV-01682-DAD-SAB, 2019 WL 4877573, at *11 (E.D. Cal. Oct. 3, 2019), *report and recommendation adopted*, 2020 WL 32322 (E.D. Cal. Jan. 2, 2020).

Here, the Estate has not appeared, thus preventing a decision on the merits, and thus the

Court finds that the seventh *Eitel* factor does not preclude default judgment.

**7. Conclusion**

In light of the discussion of all the *Eitel* factors, the Court will grant default judgment as to the Estate, enter a final judgment of forfeiture vesting all right, title, and interest in the funds in Plaintiff, and approve the parties' stipulation for final judgment of forfeiture.

## IV. ORDER

For the reasons given above, IT IS ORDERED as follows:

1. Plaintiff's motion for default judgment as to the Estate of Douglas Halderman is granted. (ECF No. 30).
2. The Clerk of Court shall issue a judgment consistent with this order.
3. A judgment by default is entered against any right, title, or interest of the Estate of Douglas Halderman in the funds referenced in this case and all other potential claimants who have not filed claims in this action. And pursuant to the parties' stipulation, judgment is entered against Claimant Regina Marie Halderman. (ECF No. 24-1, p. 2).
4. All right, title, and interest in the funds is forfeited to the United States, to be disposed of according to law, subject to the interest of Claimant Regina Marie Halderman pursuant to the parties' stipulation. (ECF No. 24).
5. Upon entry of this order, but no later than 60 days thereafter, the approximately $11,700.00 in U.S. currency, together with any interest that may have accrued on that amount, shall be returned to Claimant Regina Marie Halderman through her attorney John F. Garland.
6. The United States and its servants, agents, and employees and all other public entities, their servants, agents, and employees, are released from any and all liability arising out of or in any way connected with the seizure, arrest, or forfeiture of the funds. This is a full and final release applying to all unknown and unanticipated injuries, and/or damages arising out of said seizure, arrest, or forfeiture, as well as to those now known or disclosed. Claimant Regina Marie Halderman has waived the provisions of California Civil Code § 1542.

7. All parties shall bear their own costs and attorney's fees.
8. Based upon the complaint's allegations and the parties' stipulation, the Court enters a certificate of reasonable cause pursuant to 28 U.S.C. § 2465,[5] that there was reasonable cause for the seizure and arrest of the funds and for the commencement and prosecution of this forfeiture action.
9. The Court retains jurisdiction to enforce the terms of this final judgment of forfeiture.
10. The Clerk of Court is instructed to close this case.

IT IS SO ORDERED.

Dated: **September 12, 2025**

/s/ Erica P. Grosjean
UNITED STATES MAGISTRATE JUDGE

[5] 28 U.S.C. § 2465(a)(2) provides that, "[u]pon the entry of a judgment for the claimant in any proceeding to condemn or forfeit property seized or arrested under any provision of Federal law if it appears that there was reasonable cause for the seizure or arrest, the court shall cause a proper certificate thereof to be entered and, in such case, neither the person who made the seizure or arrest nor the prosecutor shall be liable to suit or judgment on account of such suit or prosecution, nor shall the claimant be entitled to costs, except as provided in subsection (b)."